UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSE AMILCAR LINARES URRUTIA,

     Petitioner,

   -v-                  15-CV-513-JTC

LORETTA E. LYNCH, Attorney General
of the United States;
MICHAEL PHILIPS, Field Office Director for Detention
and Removal, Buffalo Field Office,
Department of Homeland Security, Bureau of
Immigration and Customs Enforcement;
DEPARTMENT OF HOMELAND SECURITY;
TODD TRYON, Facility Director,
Buffalo Federal Detention Facility.

     Respondents.

---

## **INTRODUCTION**

Petitioner Jose Urrutia, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by this court's order entered July 21, 2015 (Item 4), respondent[1] has submitted an answer and return (Item 6), along with an accompanying memorandum of law (Item 7), in opposition to the petition. Petitioner declined to file a reply. For the reasons that follow, the petition is denied.

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* section 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner, a native and citizen of El Salvador, arrived in the United States at an unknown place and time without being admitted or paroled after inspection by an Immigration officer. *See* Item 6-1 (Payan Decl.), ¶ 5; Item 1, ¶ 11.

On November 18, 1988, petitioner was encountered by United States Border Patrol agents near El Paso, Texas and was placed in removal proceedings. On November 29, 1988, an Immigration Judge ("IJ") ordered petitioner deported, and he was removed to El Salvador on December 15, 1988. Payan Decl., ¶¶ 6-8; Item 6-2 ("Exh. A"), pp. 6, 21-23.

Thereafter, petitioner re-entered the United States without being admitted or paroled by an Immigration officer. On February 5, 1991, he filed an application for Temporary Protected Status ("TPS"). Payan Decl., ¶¶ 9-10; Exh. A, p. 6. On October 6, 1995, petitioner was encountered by U.S. Border Patrol agents in Buffalo, New York. He requested and was granted until October 16, 1995 to voluntarily depart the United States, but he failed to depart within the time specified. Payan Decl., ¶¶ 11-12; Exh. A, p. 7.

On September 4, 2001, petitioner filed a second application for TPS. This application was denied on September 3, 2004. On March 11, 2005, petitioner filed a third application for TPS, which was denied on September 1, 2005. Payan Decl., ¶¶ 13-14; Exh. A, p. 7.

According to DHS records, petitioner has the following criminal history:

-On or about May 10, 1994, petitioner was convicted in the Fairfax County General District Court, Fairfax, Virginia, of Larceny.

-On or about July 1, 1994, petitioner was convicted in the Fairfax County General District Court, Fairfax, Virginia, of Unlawful Entry.

> -On or about June 10, 2004, petitioner was convicted in the New York County Criminal Court, New York, New York, of Criminal Mischief and was sentenced to time served.
>
> -On or about June 23, 2007, petitioner was convicted in the New York County Criminal Court, New York, New York, of Criminal Possession of a Controlled Substance in the 7th Degree (crack cocaine). He was sentenced to a time served and his driver's license was suspended for 6 months.
>
> -On or about January 19, 2011, petitioner was convicted in the Stamford Superior Court, Stamford, Connecticut, of Criminal Trespass and Breach of Peace. He was sentenced to a 45-day term of incarceration.

*See* Payan Decl., ¶ 15; Exh. A, pp. 7, 12, 18.

On January 4, 2011, while at the Bridgeport Correctional Center in Bridgeport, Connecticut, petitioner was encountered by DHS officers. His immigration status was determined and he was served with a Notice of Intent/Decision to Reinstate Prior Order *See* Payan Decl., ¶ 16; Exh. A, pp. 7, 20. On January 7, 2011, an immigration official determined that petitioner was subject to removal under a prior order of removal. Payan Decl., ¶ 17; Exh. A, p. 20. Upon completion of his sentence with the Connecticut Department of Corrections, petitioner was received into DHS custody on February 1, 2011. Payan Decl., ¶ 18; Exh. A, p. 7. He was removed to El Salvador on March 25, 2011. Payan Decl., ¶ 19; Exh. A, p.8.

Petitioner re-entered the United States at an unknown place and time. On April 25, 2012, he was encountered and interviewed by DHS officers at the Peace Bridge in Buffalo, New York. He was served with a Notice of Intent/Decision to Reinstate Prior Order, and was ordered removed from the United States. Payan Decl., ¶¶ 20-21; Exh. A, pp. 8, 15-19.

On May 1, 2012, petitioner was charged in a criminal complaint in the United States District Court for the Western District of New York with the violation of 8 U.S.C. § 1326(a) (re-entry of a removed alien) and was remanded to the custody of the U.S. Marshals Service.

On June 14, 2012, he was indicted by a federal grand jury, pled guilty to the Indictment on December 6, 2012, and was sentenced to time served.  On December 9, 2012, petitioner was placed in DHS custody pending removal to El Salvador. Payan Decl., ¶¶ 22-25; Exh. A, pp. 8, 32-44.

On February 6, 2013, U.S. Citizenship and Immigration Services ("USCIS") determined that petitioner was not subject to a reinstatement order. Payan Decl., ¶ 26; Exh. A, p. 8   Removal proceedings were commenced by a Notice to Appear ("NTA") served February 9, 2013, which charged petitioner with being subject to removal from the United States pursuant to § 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1282(a)(2)(A)(i)(II), as an alien who has been convicted of a controlled substance offense, and pursuant to § 212(a)(6)(A)(i)(II), 8 U.S.C. § 1182(a)(6)(A)(i)(II), as an alien present in the United States without being admitted or paroled . Payan Decl., ¶ 27; Exh. A, pp. 12-14.

On August 21, 2013, an IJ denied petitioner's requests for relief and ordered him removed to Spain or El Salvador. Payan Decl., ¶ 29; Exh. A, p. 8.  On September 19, 2013, petitioner appealed the decision to the Board of Immigration Appeals ("BIA"), which remanded the case back to the IJ for further proceedings.  On May 20, 2014, an IJ denied petitioner's requests for relief and ordered his removal to El Salvador. Payan Decl., ¶ ¶ 30-31; Exh. A, pp. 8-11. On November 13, 2014, the BIA dismissed petitioner's appeal from the IJ's decision.  Payan Decl., ¶ 32; Exh. A, pp.9-11.

On November 18, 2014, DHS sent a presentation packet to the Consulate General of El Salvador (the "Consulate") in New York, New  York, requesting that a travel document be issued for petitioner's removal.  DHS records also indicate that petitioner was interviewed

by a representative of the Consulate on November 26, 2014. Payan Decl., ¶ 33; Exh. A, p. 24-27.

On November 26, 2014, petitioner filed a petition for review of the BIA's November 13, 2014 order in the United States Court of Appeals for the Second Circuit. Payan Decl., ¶ 34; Exh. A, pp. 45-48. On December 1, 2014, petitioner filed a motion for a stay of removal in the Second Circuit. Payan Decl., ¶ 35; Exh. A, p. 46. At that time, DHS ceased its efforts to execute the removal order due to the forbearance policy between DHS and the Second Circuit which prevents removal while a motion to stay is pending. *Id.*

In February 2015, DHS conducted a review of petitioner's custody status in accordance with immigration regulations. Payan Decl., ¶ 36; Exh. A, pp. 6-10. On February 18, 2015, DHS advised petitioner that, based upon the totality of information available in his file, DHS determined that petitioner would be a threat to the community and a flight risk if he were to be released from custody. *Id.,* p. 9. An additional review of petitioner's custody status was conducted by DHS Headquarters Post-Order Custody Review Unit ("HQ POCRU"), including an interview of the petitioner. On May 28, 2015, DHS determined to continue petitioner's detention in DHS custody. Payan Decl., ¶¶ 37-38; Exh. A, pp. 2-5.

By order dated July 2, 2015, the Second Circuit granted the petitioner's motion for a stay of removal and his request for *pro bono* counsel. Payan Decl., ¶ 39; Exh. A, p. 47. His petition for review remains pending before the Second Circuit. Payan Decl., ¶ 40.

Petitioner filed this petition on June 10, 2015, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. He argues that his detention is unconstitutional and indefinite as the Consulate of El Salvador has refused to issue travel documents. Item 1, ¶ 15. The

respondent contends that, at this time, the only obstacle to petitioner's immediate removal to El Salvador is the stay order issued by the Second Circuit. Payan Decl., ¶ 42.

**DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis,* 533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, the order of removal became final on November 13, 2014, when the BIA dismissed petitioner's appeal of the IJ's order of removal. *See* 8 C.F.R. § 1241.1(a) (order of removal becomes final "upon dismissal of an appeal by the Board of Immigration Appeals"). His detention thereafter was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of 90 days (the "removal period"), commencing on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted

---

[2]INA § 241(a)(6) provides in full as follows:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.  Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(d)(1).  The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."  8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, the order of removal became final on November 13, 2014 and the removal period under INA § 241(a) commenced.[3] DHS promptly undertook efforts to secure a travel document for petitioner's removal to El Salvador by sending a presentation package to the Consulate on November 18, 2014. *See* Payan Decl., ¶ 33. Additionally, on November 26, 2014, a representative of the Consulate interviewed petitioner. *Id.* However, on

---

[3] Petitioner does not challenge the period of detention prior to the final order of removal.

November 26, 2014, petitioner filed a petition for review in the Second Circuit Court of Appeals and, on December 1, 2014, he filed a motion for a stay of removal.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court.  *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. November 3, 2011) (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. October 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit's forbearance policy).  On July 2, 2015, the motion for a stay of removal was granted and the initial forbearance was replaced by a formal stay of removal.  Thus, the 90-day removal period has been tolled until the Second Circuit rules on the petition.  *See Gozo v. Napolitano,* 309 F. App'x 344, 346 (11th Cir. 2009) (removal period interrupted by motion for stay and alien properly detained under section 241 pending circuit court review of petition).  Accordingly, petitioner's detention is lawful under section 241.

Additionally, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. January 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate"); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) (detention in excess of six months was reasonable where petitioner sought and received multiple stays) (citing *Doherty v. Thornburgh*, 943 F.2d at 205).

Furthermore, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang v. Ashcroft*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual

basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to El Salvador in the reasonably foreseeable future. While petitioner has argued that no travel document has been secured, *see* Item 1, ¶ 15, there are no institutional obstacles to petitioner's removal. In fact, he has been removed to El Salvador twice before. There is no reason to believe that travel documents will not be obtained once the petition is decided by the Second Circuit court.

In the meantime, petitioner's continued detention is not in violation of his due process rights as long as his removal is reasonably foreseeable. Detention during an appellate stay of removal, whether formal or in accordance with the Second Circuit forbearance policy, is not indefinite because the end of the litigation provides a definite end point. *See Prieto-Romero v. Clark,* 534 F.3d 1053, 1065 (9th Cir. 2008) (alien's lengthy detention not indefinite under INA § 236 where end point foreseeable with conclusion of litigation); *Soberanes v. Comfort,* 388 F.3d 1305, 1311 (10th Cir. 2004) (alien's detention during judicial review not indefinite because it has a "definite and evidently impending termination point"). Petitioner has received all the process he is due, as DHS has periodically reviewed his custody status in accordance with the applicable regulations.

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on any delay resulting from his request for circuit court review of the final order of removal to claim that his prolonged detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the

Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed.  This dismissal is without prejudice to file another petition should it subsequently appear that removal is no longer reasonably foreseeable.  *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama v. Dep't of Homeland Sec.,* 553 F. Supp. 2d 301, 307 (W.D.N.Y. 20008).

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\_\_\_\_\_\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: November 13,  2015